2009 Ark. 596

**John and Cindy SCHUBERT,**
**Appellants,**

v.

**ARKANSAS DEPARTMENT OF**
**HUMAN SERVICES & K.M.,**
**A Minor Child, Appellees.**

No. 09–643.

Supreme Court of Arkansas.

Dec. 3, 2009.

Law Office of Candice A. Settle, P.A., by: Candice A. Settle, Van Buren, for appellants.

Tabitha Baertels McNulty, Office of Chief Counsel, Little Rock, and Chrestman Group, PLLC, by: Keith Chrestman, Jonesboro, for appellees.

DONALD L. CORBIN, Justice.

Presented to this court is a motion by Appellees Arkansas Department of Human Services and K.M., a minor child (collec-

tively, "DHS"), to dismiss an appeal from an order denying a motion for intervention filed by Appellants John and Cindy Schubert. The appeal, itself, was filed in the Arkansas Court of Appeals and has been docketed as *Schubert v. Arkansas Department of Human Services*, No. CA09–695, 2010 WL 374183.[1] In requesting that we dismiss the appeal, DHS argues that the Schuberts failed to sign the notice of appeal, as required by Ark. Sup.Ct. R. 6–9 (2009), and have not filed a request to proceed with a belated appeal, thus, their appeal should be dismissed.[2] Our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(b)(5) (2009). We deny the motion to dismiss.

The underlying action in this case began as a dependency-neglect matter. DHS was notified by staff at St. Edward Mercy Health Center that a child, K.M., had been born to Cynthia Hudson, who suffered from bipolar disorder and post-traumatic-stress disorder. The staff believed that the child would not be safe if sent home with her mother. DHS petitioned for emergency custody, and the circuit court entered an order finding K.M. to be dependent neglected and placing custody with DHS. DHS subsequently placed K.M. in foster care in the home of the Schuberts.

K.M. remained in the Schuberts' home while her case plan proceeded. Initially, the goal of the plan was reunification of mother and child; however, on August 15, 2008, Hudson signed a consent voluntarily relinquishing her parental rights. Brandon Hudson, the legal father of K.M., also signed a voluntary consent relinquishing his parental rights. Thereafter, DHS sought to terminate all parental rights and to change the goal of the case plan to adoption. A warning order was issued to any putative fathers, and a hearing on the termination petition was scheduled for November 6, 2008. The court entered an order on November 21, 2008, terminating the parental rights of Cynthia, Brandon, and Jackie Overby, the putative father, and granting DHS the authority to consent to K.M.'s adoption.

K.M. continued to remain in the Schuberts' home until March 20, 2009, at which time the circuit court entered an order that allowed DHS the immediate discretion to change K.M.'s placement. The Schuberts filed their motion to intervene on March 26, 2009, arguing that K.M. had been in their foster care since she was five days old and that they were led to believe that they would be allowed to adopt the child. Appellants filed a petition for adoption contemporaneously with their motion to intervene.

A hearing on the motion and petition was held on April 9, 2009. The circuit court entered an order on April 24, 2009, denying the motion to intervene. The circuit court found that DHS had the authority to consent to K.M.'s adoption and that DHS had not designated the Schuberts as an appropriate adoptive home. Thus, the court reasoned that the Schuberts did not satisfy the requirements of Ark. R. Civ. P. 24(a) (2009) allowing for intervention by right, nor was permissive intervention warranted under the facts of the case. The Schuberts filed a notice of appeal on May 4, 2009. That notice was signed by counsel for the Schuberts but not the

1. In conjunction with the instant case, we accepted certification of a motion pending in the court of appeals in which DHS requests the court to reconsider an order granting Appellants an extension of time to file their brief on appeal. As the Schuberts filed that brief on September 11, 2009, that motion is now moot.

2. Appellants filed a motion for belated appeal along with their response to Appellees' motion to dismiss.

Schuberts themselves. DHS subsequently filed the instant motion to dismiss.

In its motion to dismiss, DHS argues that the appeal should be dismissed because the Schuberts failed to sign the notice of appeal as required by Rule 6–9(b)(1)(B). Appellants counter that Ark. R.App. P.-Civ. 2(a)(2) (2009), not Rule 6–9, is applicable to an appeal from the denial of a motion to intervene, so that their failure to sign the notice does not warrant dismissal. Alternatively, Appellants argue that if Rule 6–9 is controlling, this court should grant their motion for belated appeal. Thus, the issue to be decided by this court is whether the Schuberts' appeal from the denial of their motion to intervene is governed by Rule 6–9 or whether it falls within the ambit of Rule 2(a)(2).

Rule 6–9 provides in relevant part:

    (a) *Appealable Orders.*

    (1) The following orders may be appealed from dependency-neglect proceedings:

    (A) adjudication order;

    (B) disposition, review, no reunification, and permanency planning order if the court directs entry of a final judgment as to one or more of the issues or parties based upon the express determination by the court supported by factual findings that there is no just reason for delay of an appeal, in accordance with Ark. R. Civ. P. Rule 54(b);

    (C) termination of parental rights; and

    (D) denial of right to appointed counsel pursuant to Ark.Code Ann. § 9–27–316(h).

In *Posey v. Arkansas Department of Health & Human Services,* 370 Ark. 1, 256 S.W.3d 504 (2007) (per curiam), this court explained that Rule 6–9 was a new rule adopted by this court to govern appeals in dependency-neglect cases. We have further explained that the purpose of Rule 6–9 is to expedite the appellate process in dependency-neglect cases by curtailing extensions and establishing time lines. *Ratliff v. Ark. Dep't of Health & Human Servs.,* 371 Ark. 534, 268 S.W.3d 322 (2007) (per curiam).

Rule 2(a)(2) provides that an appeal may be taken from "[a]n order which in effect determines the action and prevents a judgment from which an appeal might be taken, or discontinues the action." Although the right to appeal the denial of a motion to intervene is not specifically set forth in this rule, this court has recognized that such an order is appealable pursuant to Rule 2(a)(2). See *Duffield v. Benton County Stone Co.,* 369 Ark. 314, 254 S.W.3d 726 (2007) (holding that an appeal from a denial of a motion to intervene as a matter of right is allowed under Rule 2(a)(2)); *Billabong Prods., Inc. v. Orange City Bank,* 278 Ark. 206, 644 S.W.2d 594 (1983) (holding that pursuant to Rule 2(a)(2) a party may appeal an order denying a motion for permissive intervention). As such, a party is not required to wait until final judgment is rendered in a case before appealing an order denying intervention.

Likewise, Rule 6–9 provides a mechanism for an appeal in certain circumstances prior to entry of a final order in a dependency-neglect case. Pursuant to Rule 6–9(a)(1)(B), disposition, review, and permanency planning orders are only appealable, however, if the court enters an order in compliance with Ark. R. Civ. P. 54(b) (2009). Thus, not every order entered in a dependency-neglect case can be immediately appealed, a fact previously recognized by this court in *West v. Arkansas Department of Human Services,* 373 Ark. 100, 281 S.W.3d 733 (2008). There, we accepted a certified question from the court of appeals involving the issue of

whether a permanency planning order awarding permanent custody of two of the four children involved in the case was final and appealable. Specifically, we addressed a potential conflict between Ark. R.App. P.-Civ. 2(d) (2009) and Rule 6–9: Rule 6–9(a)(1)(B) provides that a "permanency planning order" is appealable in accordance with Rule 54(b), while Rule 2(d) provides that custody orders are final, appealable orders. This court determined that even though Rule 6–9 did not specifically list a permanent custody order as appealable, the order granting permanent custody was a final, appealable order because there was no direct conflict between Rule 2(d) and Rule 6–9. More specifically, this court explained that Rule 6–9 did not state that permanent custody orders are not final, appealable orders or that a Rule 54(b) certificate is necessary for a permanent custody order relative to one child to be appealable. Ultimately, this court held that the permanent custody order was appealable under Rule 2(d).

 Considering our holding in *West* and reading the plain language of the rule, we conclude that an appeal from the denial of a motion to intervene in a dependency-neglect matter is not governed by Rule 6–9. It is true that the purpose of Rule 6–9 is to expedite the appellate process in dependency-neglect matters but concluding that Rule 6–9 is not applicable in this case does not necessarily impede that purpose.

First, Rule 2(a)(2) allows an immediate appeal from an order denying intervention. Second, such an appeal does not prohibit the circuit court from maintaining jurisdiction and conducting hearings, as Ark.Code Ann. § 9–27–343(c) (Repl.2008) specifically provides that the circuit court retains jurisdiction to conduct further hearings, pending an appeal from any case involving a juvenile out-of-home placement. *See also Harwell–Williams v. Ark. Dep't of Human Servs.*, 368 Ark. 183, 243 S.W.3d 898 (2006).[3] Moreover, not every order resulting from a dependency-neglect case is automatically appealable under Rule 6–9. *See Ark. Dep't of Human Servs. v. Denmon*, 2009 Ark. 485, 346 S.W.3d 283 (holding that a permanency planning order was not immediately appealable under Rule 6–9 absent a Rule 54(b) certification). Accordingly, as this appeal is governed by Rule 2(a)(2), the Schuberts' failure to sign the notice of appeal was not a fatal defect, and we deny DHS's motion to dismiss.

Motion to dismiss denied; motion for reconsideration moot.

IMBER, J., not participating.

---

**3.** *Harwell–Williams* was decided prior to the effective date of Rule 6–9.