SLIP OPINION

Cite as 2015 Ark. 402

# SUPREME COURT OF ARKANSAS

No. CV–15–395

| | |
|---|---|
| RAYMOND EDWARDS AND PATRICIA EDWARDS <br><br> APPELLANTS <br><br> V. <br><br> ARKANSAS DEPARTMENT OF HUMAN SERVICES <br><br> APPELLEE | Opinion Delivered November 5, 2015 <br><br> APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. 43JV-11-54] <br><br> HONORABLE SANDY HUCKABEE, JUDGE <br><br> <u>APPEAL DISMISSED; COURT OF APPEALS' OPINION VACATED</u>. |

**PAUL E. DANIELSON, Associate Justice**

Appellants Raymond Edwards and Patricia Edwards appeal from the circuit court's order denying their motion for custody of their granddaughter, M.A.E., and dismissing them from the dependency-neglect proceedings brought by appellee Arkansas Department of Human Services ("ADHS"). The Edwardses' appeal was originally dismissed by the court of appeals, *see Edwards v. Arkansas Dep't of Human Servs.*, 2015 Ark. App. 267, 460 S.W.3d 802, and this court granted the Edwardses' petition for review. Upon the grant of a petition for review, we consider the case as though it had been originally filed in this court. *See Mahone v. Arkansas Dep't of Human Servs.*, 2011 Ark. 370, 383 S.W.3d 854. On appeal, the Edwardses assert that (1) their notice of appeal and amended notice of appeal were timely filed and (2) there was insufficient evidence that the denial of their motion for custody was in M.A.E.'s

SLIP OPINION

best interest. Because the order from which the Edwardses appeal is not a final, appealable order, we dismiss the appeal.

On March 9, 2011, ADHS filed a petition for emergency custody and dependency neglect against Trish Edwards and Bruce Edward Allen, the parents of M.A.E., M.E., and A.E. An ex parte order for emergency custody was then entered, finding that immediate removal of the children from their mother was in their best interest and necessary to protect their health and safety, and placing custody of the children with ADHS. Subsequently, a probable-cause order was filed. In May 2011, the children were adjudicated dependent-neglected due to environmental neglect, with the goal of the case being reunification.

On July 6, 2011, the Edwardses, the children's maternal grandparents, moved to intervene in the matter, and the circuit court granted their motion. In October 2011, the Edwardses filed a petition seeking guardianship of the three children,[1] and on May 9, 2012, they filed a motion for child custody, asserting that it was in the best interest of the children to be placed in their custody and continue to be raised together as a family unit. On November 13, 2012, ADHS and the children's attorney ad litem jointly petitioned for termination of the parental rights of Trish and Bruce. Shortly thereafter, the Edwardses filed an amended petition seeking to be appointed the guardians of M.A.E., M.E., and A.E.

On May 8, 2013, an agreed order was entered, permitting the Edwardses to visit M.E. and A.E. two times a week and directing family counseling for the Edwardses, M.E., and A.E.

---

[1]Their petition affirmatively stated that they already had guardianship of another sibling, M.D.E.

In addition, the order directed that, as of June 20, 2013, temporary custody of M.E. and A.E. was to be transferred from ADHS to the Edwardses. In May 2014, the circuit court entered an order granting permanent custody of M.E. and A.E. to the Edwardses as of November 4, 2013,[2] finding that it was in the best interests of M.E. and A.E. and best for their health, welfare, and safety. At the same time, the court ordered that M.A.E. remain in foster care, reserving its ruling as to her future placement.

In its order of July 31, 2014, however, the circuit court ruled that, while it was clear that the Edwardses were good people who loved and cared deeply for M.A.E., it was not in M.A.E.'s best interest to be placed in their custody, nor was it best for her health, welfare, and safety. To that end, the circuit court denied the Edwardses' motion for custody of M.A.E. and ordered that she was to remain in foster care. It also ceased all visitation between the three siblings and permitted a final visit between M.A.E., her siblings, and the Edwardses. Finally, the circuit court dismissed the Edwardses from the case and included a certificate pursuant to Arkansas Rule of Civil Procedure 54(b) in its order. It is from this order that the Edwardses bring the instant appeal.

As their first point on appeal, the Edwardses assert that their appeal is timely because both their notice of appeal and amended notice of appeal were timely filed. They contend that their appeal is from the denial of a motion for custody, not one falling within the confines of Arkansas Supreme Court Rule 6-9, which governs appeals in dependency-neglect cases;

---

[2]This was the date of the hearing that was held before the order was entered.

therefore, they assert, the twenty-one-day limit for filing a notice of appeal set forth in Rule 6-9 does not apply. Instead, they aver, that their appeal is a juvenile case governed by Arkansas Rule of Appellate Procedure–Civil 2(c), which provides that such appeals are to be made in the same time and manner as appeals from circuit court, and, as such, they had thirty days in which to file their notice of appeal.

ADHS responds that, assuming the case is appealable, any order arising from a dependency-neglect proceeding should be subject to Rule 6-9. The attorney ad litem for M.A.E. agrees with and adopts the position of ADHS.

We need not address the timeliness of the Edwardses' notice of appeal and amended notice of appeal because we must dismiss their appeal for lack of a final order. While neither party has raised this issue, the question whether an order is final and subject to appeal is a jurisdictional question that this court will raise sua sponte. *See Chitwood v. Chitwood*, 2013 Ark. 195. Here, the Edwardses bring their appeal from that portion of the circuit court's order denying them custody of M.A.E.; however, such an order is not appealable under this court's rules.

Turning first to Arkansas Supreme Court Rule 6-9, which governs appeals in dependency-neglect cases, the rule provides that the following orders may be appealed from dependency-neglect proceedings:

> (A) adjudication order;
> (B) disposition, review, no reunification, and permanency planning order if the court directs entry of a final judgment as to one or more of the issues or parties based upon the express determination by the court supported by factual findings that there is no just reason for delay of an appeal, in accordance with Ark. R. Civ. P. 54(b);

SLIP OPINION

(C) termination of parental rights;
(D) denial of right to appointed counsel pursuant to Ark. Code Ann. § 9-27-316(h); and
(E) denial of a motion to intervene.

Ark. Sup. Ct. R. 6-9(a)(1) (2015). Notably, the rule lacks any specific mention of an appeal from an order denying custody.

Nor does Arkansas Rule of Appellate Procedure–Civil 2 permit such an appeal outright, despite the Edwardses' claims to the contrary. First and foremost, the order is not a final one in accord with Ark. R. App. P.–Civ. 2(a)(1) because the order clearly contemplates future action with respect to the placement of M.A.E. Notwithstanding, Rule 2(d) does provide that all "final orders awarding custody are final appealable orders." Ark. R. App. P.– Civ. 2(d) (2015). In this case, however, the Edwardses seek to appeal that portion of the circuit court's order denying custody of M.A.E., not its grant of permanent custody of M.E. and A.E.

While the order denying custody is not explicitly appealable under either Ark. Sup. Ct. R. 6-9 or Ark. R. App. P.–Civ. 2, a circuit court may certify an otherwise nonfinal order for an immediate appeal by executing a certificate pursuant to Rule 54(b) of the Arkansas Rules of Civil Procedure. *See, e.g.*, *Pyramid Life Ins. Co. v. Parsons*, 2013 Ark. 125. Likewise, Ark. Sup. Ct. R. 6-9(a)(1)(B) permits an appeal from a "disposition, review, no reunification, and permanency planning order" but also requires an "express determination by the court supported by factual findings" in accordance with Rule 54(b). *See* Ark. Sup. Ct. R. 6- 9(a)(1)(B). As already noted, the circuit court in the instant case did attempt a Rule 54(b)

SLIP OPINION

certification, but it is clear under this court's case law that the circuit court's certificate is simply insufficient.[3]

Pursuant to Ark. R. Civ. P. 54(b),

[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination, supported by specific factual findings, that there is no just reason for delay and upon an express direction for the entry of judgment.

Ark. R. Civ. P. 54(b) (2015). With respect to the requirements of Rule 54(b), we have observed that merely tracking the language of Rule 54(b) will not suffice; the record must show facts to support the conclusion that there is a likelihood of hardship or injustice which would be alleviated by an immediate appeal rather than at the conclusion of the case. *See Fisher v. Citizens Bank of Lavaca*, 307 Ark. 258, 819 S.W.2d 8 (1991). Not only must the record show such facts, but also "[w]e have consistently held that the rule requires the order to include specific findings of any danger of hardship or injustice that could be alleviated by an immediate appeal and to set out the factual underpinnings that establish such hardship or injustice." *Holbrook v. Healthport, Inc.*, 2013 Ark. 87, at 4.

In the instant case, the circuit court's order merely sets forth each of the circuit court's rulings, then recites the following language from the rule:

Upon the basis of the foregoing factual findings, the court hereby certifies, in accordance with Rule 54(b)(1), Ark. R. Civ. P., that it has determined that there is

---

[3]Indeed, the Edwardses conceded as much in their petition for review.

SLIP OPINION

no just reason for delay of the entry of a final judgment and that the court has and does hereby direct that the judgment shall be a final judgment for all purposes.

The certificate does not include specific findings of any danger of hardship or injustice that could be alleviated by an immediate appeal, nor does it detail facts that establish such a hardship or injustice. When it does not do so, it does not satisfy the requirements of Rule 54(b). *See, e.g.*, *Robinson v. Villines*, 2012 Ark. 211.

Because the order denying custody of M.A.E. is not final or otherwise appealable, and the included certificate fails to comply with Rule 54(b), we lack jurisdiction to hear the appeal. *See, e.g.*, *Crafton, Tull, Sparks & Assocs. v. Ruskin Heights, LLC*, 2013 Ark. 85. Accordingly, the appeal is dismissed without prejudice.

Appeal dismissed; Court of Appeals' opinion vacated.

BAKER, GOODSON, and HART, JJ., dissent.

**COURTNEY HUDSON GOODSON, Justice, dissenting.** The expedition of the appellate process is our stated goal in dependency-neglect cases. *Ashcroft v. Ark. Dep't of Human Servs.*, 2009 Ark. 461 (per curiam) (citing *Ratliff v. Ark. Dep't of Health & Human Servs.*, 371 Ark. 534, 268 S.W.3d 322 (2007)); *see also Schubert v. Ark. Dep't of Human Servs.*, 2009 Ark. 596, 357 S.W.3d 458. Rather than adhering to this important policy in matters involving children, the majority chooses to parse words and to reach a result that is both illogical and inconsistent with this court's caselaw. I dissent.

In this case, the circuit court denied the Edwardses' request for permanent custody of their granddaughter, M.A.E., and dismissed them from the dependency-neglect proceeding.

They wish to appeal that final custody decision. The majority acknowledges, as it must, that Arkansas Supreme Court Rule 6-9 does not speak of permanent custody orders in dependency-neglect cases. Yet, contrary to this court's opinion in *West v. Arkansas Department of Human Services*, 373 Ark. 100, 281 S.W.3d 733 (2008), the majority holds that no appeal lies from the final, permanent custody order without a Rule 54(b) certificate. With all due respect, the majority's position is not well taken.

In *West*, this court addressed the issue whether an order granting permanent custody of two children to their father could be appealed by the mother, from whose custody the children had been removed. Also in that case, the circuit court had continuing jurisdiction regarding another child, and the custody order contained no Rule 54(b) certificate, as required in some instances by Rule 6-9. We accepted certification of that case from the court of appeals to determine whether Rule 2(d) of the Arkansas Rules of Appellate Procedure–Civil applied to permanent custody orders in dependency-neglect cases and whether that rule conflicted with Rule 6-9. This court found no conflict between the two rules and specifically held that Rule 2(d) applies to permanent custody orders in dependency-neglect cases. We reasoned as follows:

> It is readily apparent from its text that Rule 6-9 does not specifically refer to permanent custody orders in the context of a dependency-neglect case. Accordingly, there is no direct conflict between Rule 2(d) and Rule 6-9, as Rule 6-9 does not state that permanent custody orders are not final, appealable orders or that a Rule 54(b) certificate is necessary for a permanent custody order relative to one child to be appealable. Rule 2(d), on the other hand, specifically states that custody orders are final, appealable orders. *See also Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002) (holding that Rule 2(d) permits an appeal from any order that is final as to the issue of custody, regardless of

whether the order resolves all other issues). In the order appealed from in this case, the circuit court specifically said that "[t]he case is closed as to [B.W.] and [C.W.]" because permanent custody was granted to Curtis West. We hold that Rule 2(d) applies to permanent custody orders in dependency-neglect cases, and, thus, Shannon West's appeal from the order granting permanent custody of B.W. and C.W. to Curtis West is a final, appealable order. We further hold that a Rule 54(b) certificate is not required under Rule 6-9 for an appeal of the permanent custody order regarding B.W. and C.W.

*West*, 373 Ark. at 104, 281 S.W.3d at 735–36.

It is abundantly clear that the *West* court held without limitation that permanent custody orders in dependency-neglect cases are appealable in their own right under Rule 2(d) without a Rule 54(b) certificate. Nonetheless, this majority now holds, as a matter of semantics, that Rule 2(d) has no application to the permanent custody order at issue because Rule 2(d) only governs orders "awarding" custody, and the order in this case *denied* a request for permanent custody. However, the holding in *West* did not turn on the particular language of Rule 2(d) or whether the circuit court's order granted or denied the petition for permanent custody. Instead, the decision rests on traditional jurisprudence and the firm understanding that permanent custody orders are final and appealable under Rule 2(d), regardless of the outcome.[1] I find it to be wholly illogical that a parent involved in a dependency-neglect case has leave to appeal when permanent custody of his or her children is given to another person or a parent, as was the case in *West*, but a parent or other relatives, like the Edwardses, who

---

[1]My view that this court looks to Rule 2(d) and traditional jurisprudence when considering the appeal of custody matters in dependency-neglect cases is also buttressed by our decision in *Arkansas Department of Human Services v. Denmon*, 2009 Ark. 485, 346 S.W.3d 293. There, we applied settled law applicable to domestic-relations cases to hold that an appeal did not lie in th

petition for permanent custody, may not in like fashion automatically appeal when the petition for permanent custody is denied. Bewilderingly, today's decision creates such an anomaly in the law.[2]

The majority also bases its decision partially on the fact that the dependency-neglect proceedings regarding M.A.E. were ongoing and not concluded by the circuit court's order. However, that circumstance was also present in *West* and was no impediment to review. Similarly, in *Schubert, supra,* this court permitted an immediate appeal from an order denying a motion to intervene, even though the dependency-neglect proceeding involving the child remained in progress.[3] Therefore, the pendency of a dependency-neglect case does not preclude an immediate appeal.

Rule 6-9 remains silent on the appealability of final orders regarding petitions for permanent custody in dependency-neglect cases. Consequently, this court should continue to look to Rule 2(d) and our caselaw to determine the issue. The majority offers no cogent reason for departing from this court's decision in *West* and does not explain its logic for permitting the disparate treatment of litigants that will result from its decision. I would hold

---

[2] I must also note that, under the majority's strained interpretation of Rule 2(d), there could be no appeal from an order denying a parent's motion for a change of custody in domestic-relations cases, as there is technically no "award" of custody in that situation either.

[3] In *Schubert*, this court was again confronted with a situation not covered by Rule 6-9. We relied on *West* and Rule 2(d) to hold that an order denying a motion to intervene in a dependency-neglect case is a final, appealable order without a Rule 54(b) certificate. Following that decision, Rule 6-9 was amended to state that the denial of a motion to intervene is an appealable order. *See* Rule 6-9(a)(1)(E).

that the circuit court's order denying the Edwardses' request for permanent custody is final and appealable without a Rule 54(b) certificate. Therefore, I dissent.

BAKER, J., joins.

**JOSEPHINE LINKER HART, Justice, dissenting.** In my view, the Edwardses were entitled to appeal from the order in question. The order satisfied Rule 2 of the Arkansas Rules of Appellate Procedure--Civil and Rule 54(b) of the Arkansas Rules of Civil Procedure.

Rule 2 of the Arkansas Rules of Appellate Procedure–Civil states in part:

(a) An appeal may be taken from a circuit court to the Arkansas Supreme Court from:

. . .

2. An order which in effect determines the action and prevents a judgment from which an appeal might be taken, or discontinues the action.

Here, the circuit court's order denied the Edwardses' motion for custody of M.A.E. and dismissed the Edwardses from the case. It was final as to them inasmuch as it discontinued their action as intervenors. There was no risk of piecemeal litigation—the Edwardses were out of court.

Furthermore, I contend that the order satisfied the requirements of Rule 54(b). The circuit court entered a Rule 54(b) certificate. It stated:

Upon the basis of the foregoing factual findings, the court hereby certifies, in accordance with Rule 54(b)(1), Ark. R. Civ. P., that it has determined that there is no just reason for delay of the entry of a final judgment and that the court has and does hereby direct that the judgment shall be a final judgment for all purposes.

Importantly, the majority is simply wrong when it states that the circuit court's order does not contain factual findings. The certificate refers to the factual findings contained in the circuit court's prior order. Specifically, it states:

> The intervenors, Patricia and Raymond Edwards are hereby dismissed from this case and do not need to appear at any future hearings. This hearing was a final hearing as to the grandparents' motion for custody of M.A.E.

I am unable to imagine what additional findings are necessary. It appears that the majority is exalting form over substance.

I am mindful that this court has somehow conflated the phrase "no just reason for delay," which is the plain wording in Rule 54(b), with the phrase "danger of hardship or injustice that could be alleviated by an immediate appeal." As I pointed out in my dissent in *Holbrook v. Healthport, Inc.*, 2013 Ark. 87, the latter phrase completely alters the stated intent of the plain wording of the rule.

> "No just reason for delay" means a party can file an interlocutory appeal, unless the interest of justice weighs against allowing it. Conversely, the required finding that "there must be some danger of hardship or injustice through delay which would be alleviated by immediate appeal" requires a finding that an interlocutory appeal should be allowed only if an immediate appeal offers a significant advantage—to alleviate the "danger" of injustice or hardship. The distinction is subtle, but quite significant—it changes the rule from favoring interlocutory appeals to discouraging them.

As in *Holbrook*, the Rule 54(b) certificate does not contain the thaumaturgic words that the majority apparently requires. Yet, I contend that it should be obvious that if "justice" is the desired result of making the proper decision with regard to M.A.E., delaying a final decision on one very viable placement option—permanent custody with the Edwardses, along with her siblings—is by definition "injustice."

*James E. Hensley, Jr.*, for appellant.
*Tabitha Baertels McNulty*, Office of Policy and Legal Services, for appellee.
*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.